POWER ELECTRIC COMPANY, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 12838.        Decided June 12, 1963.

*Alberto Picó* and *F. A. Rosa Silva* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Juan A. Faría, Assistant Solicitor General,* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

PER CURIAM: Between the years 1950 and 1954 plaintiff introduced in Puerto Rico Westinghouse electric lamps under an agency contract with said entity, to be sold in the island by subagents. Westinghouse sent the merchandise to plaintiff on consignment under invoices which fixed a list price, which was the price at which the lamps should be finally sold to the consumer. Plaintiff was bound to remit monthly to Westinghouse the amount of the lamps sales during the preceding month, at the price already fixed by Westinghouse, less 45 percent, equivalent to the commission or plaintiff's profit. This 45 percent was never considered by the Secretary of the Treasury for the purposes of levying excises.

The conflict arose because the excises were paid by plaintiff during the term 1950–1954 deducting from the *list* price the 45 percent of its compensation plus 5 percent of the balance. Plaintiff's right to receive in addition to 45 percent that 5 percent of the difference was stated in § 7 (c) of the agency contract between it and Westinghouse. That section provided that if the agent [plaintiff] shall forward (i) all statements, reports and inventories, as required in the contract, and (ii) remit, not later than the 15th day of each month the amount due, as provided in § 6 for all lamps sold by it and all agents served by it during the preceding calendar month, *whether or not collection therefor shall have been made,* it would be entitled to a sum equal to 5 percent of the amount remitted, which 5 percent was allowed as a special compensation for such prompt reporting and remittance.

Section 6 of the contract mentioned in the former clause provided that the agent shall pay to Westinghouse not later

than the 15th day of each month the total value of the sales at *list* price made by the agent and other agents served by it, for which collections have been made during the preceding calendar month, and other specified collections, less 45 percent as the basic rate of compensation and any additional compensation to which the agent might be entitled as provided in § 7 (b) and (c) above referred to.

In accordance with § 4 of the same contract, plaintiff was bound to keep account books and records of all transactions thereunder and to render Westinghouse inventory reports on the second day of each month of all the merchandise consigned and in the agent's custody at the end of the preceding calendar month, as well as such other reports that might be required. Plaintiff was also bound to send not later than the 15th day of each month a report covering the sales of lamps during the preceding month, and such other reports as it might be required to make.

Section 16 of the Internal Revenue Law of 1925, applicable in this case, levied on electrical apparatus, an excise of 15 percent on the *selling price* in Puerto Rico. Selling price according to § 4 of the Act was the *cost in Puerto Rico* plus 20 percent over that cost. The cost in Puerto Rico according to § 4 was the cost of the articles in the *point of origin* plus 10 percent on this cost estimated for freight and other transportation expenses. Point of origin according to § 2 of the Act was the first place from which a contractual relation of purchase and sale was established with the importer in Puerto Rico in relation to the merchandise subject to excises, whether such relationship is established directly or through his agents or representatives, and according to § 6, this cost at the point of origin was the one that prevailed at the time of remittance of the merchandise to the consignee.

Under the agency contract on consignment involved in this case, the Secretary of the Treasury considered as cost at the point of origin the difference of the *list* price of West-

inghouse at which the merchandise should be sold, to the consumer, after deducting 45 percent as basic compensation for plaintiff. But for the purpose of fixing that cost at the point of origin, the Secretary of the Treasury rejected the additional deduction of 5 percent which plaintiff included in computing the excise, as special compensation under § 7(c) of the contract, for the Secretary understood that said additional deduction was not permissible pursuant to the provisions of part B of § 4 of the Act. This part B provided as follows: *"Admissible deductions from the 'cost at the point of origin'.* No cash discount or any other similar deduction made to customers in order to induce them to pay the invoices within a given term shall be deductible from the cost in the 'point of origin'. Neither shall commissions to agents, commission merchants, representatives, brokers, or shipping agents, be deductible. In those cases, however, in which a trade discount is granted in order to bring down basic prices stipulated in lists, advertisements and publications to the prevailing market prices, or when a trade discount is a deduction made to the consumer from a price advertised in publications for the purpose of allowing wholesalers a profit based on a discount from the price to the consumer, as published, the Secretary of the Treasury of Puerto Rico may, if he has ample evidence from the supplier and furnished by the taxpayer which leaves no reasonable doubt as to the true and permanent nature of such discounts, admit the deductions of such discounts from the cost in the point of origin; *Provided, however,* That at no time shall any discount granted on the basis of progressive volumes of sales or on other considerations of a speculative nature be deductible; the firm legislative intent being that taxation be made on the real prices prevailing on the market, without their being influenced by speculative factors *such as discounts to induce prompt payment,* to induce a larger volume of purchases, and the like."

■ The trial court was of the opinion that the aforesaid provision, § 4B of the Act, on which the Secretary of the Treasury relied was not the applicable law. He understood that it was subdivision (c) of § 4A. It provided that when the articles subject to the payment of excises, due to the fact of their having been introduced into Puerto Rico by tax-exempt entities, or for any other reason, have not been the object of taxation, and in either case said goods are subsequently sold to persons not exempt from the payment of excises, the "cost in Puerto Rico" shall mean the price which may have been paid for such goods by the purchaser upon acquiring them; and should there be no sale, the "cost in Puerto Rico" shall be estimated by the Secretary of the Treasury.

The appellant maintains, not without reason, that this subdivision (c) is not the applicable law, and argues that if the trial court believed that Part B of § 4 was not applicable either, it should have sustained the petition. We agree that the grounds on which the trial court based its decision were not correct, but we believe the decision itself was.

If not in minute details, the additional 5 percent discount pursuant to § 7(c) of the contract is substantially contained within the prohibition in the provision previously copied. It should be noticed that under §§ 4 and 6 of the contract, plaintiff was bound to render its reports and make its remittances on the date specified of the collection of the sales of the preceding month without being entitled to any additional discount. The additional discount was granted only in those cases when it would remit to Westinghouse on the 15th day of each month the amount of all the sales, *whether or not plaintiff had already collected said amount*. Evidently, this was a discount to induce prompt payment, even of collections it had not received.

■ Plaintiff maintains that it was not a Westinghouse *client*. The word "client" used in said provision of the Act

does not have a restrictive or technical meaning, but a general one. Even if plaintiff's contract was one of a consignee agent, in the spirit of that provision it could be considered as a client, and it was.

Although on other grounds, the judgment dismissing petition for the reimbursement of excises will be affirmed.